**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

PAUL ADAM KAHLER, HAROLD
BONESTEEL, T'SHAD BRADLEY,
NATHANIEL BRUCE, WAYNE E. CONINE,
WILLIAM GARRITY, DANA HALLORAN,
MARK LaBELLE, CHARLES LINEN,
NATIKA MILLER, JEFFREY M.
ROCKEFELLER, and PETER RUPP, all both
individually and on behalf of a class of others
similarly situated,

                Plaintiffs,

v.

THE COUNTY OF RENSSELAER; DANIEL
KEATING, both individually and in his official
capacity as Sheriff of the County of Rensselaer;
LARRY WALRAED, both individually and as
Undersheriff of the County of Rensselaer;
ROBERT LOVERIDGE, both individually and as
Colonel in the Rensselaer County Sheriff's
Department; HAROLD SMITH, both individually
and as Lieutenant in the Rensselaer County
Sheriff's Department; and KATHLEEN JIMINO,
both individually and as County Executive of the
County of Rensselaer,

                Defendants.

_____

NATHANIEL BRUCE, MARK LaBELLE,
T'SHAD BRADLEY, NATIKA MILLER,
PETER RUPP, WAYNE E. CONINE,
JEFFREY M. ROCKEFELLER, WILLIAM
GARRITY, HAROLD BONESTEEL, CHARLES
LINEN, and DANA HALLORAN, all both
individually and on behalf of a class of others
similarly situated,

                Plaintiffs,

v.

COUNTY OF RENSSELAER; DANIEL
KEATING, both individually and in his official

No. 03-CV-1324
(TJM/DRH)

(Lead Case)

No. 02-CV-847
(TJM/DRH)

(Member Case)

capacity as Sheriff of the County of Rensselaer;
LARRY WALRAED, both individually and as
Undersheriff of the County of Rensselaer;
ROBERT LOVERIDGE, both individually and as
Colonel in the Rensselaer County Sheriff's
Department; HAROLD SMITH, both individually
and as Lieutenant in the Rensselaer County
Sheriff's Department; and KATHLEEN JIMINO,
both individually and as County Executive of the
County of Rensselaer,

                                              Defendants.

_____

**APPEARANCES:**                    **OF COUNSEL:**

ELMER ROBERT KEACH, III, ESQ.
Attorney for Plaintiffs
1040 Riverfront Center
Post Office Box 70
Amsterdam, New York 12010

NAPIERSKI, VANDENBURGH &            THOMAS J. O'CONNOR, ESQ.
  NAPIERSKI, L.L.P.
Attorney for Defendants
296 Washington Avenue Extension
Albany, New York 12203

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## MEMORANDUM-DECISION AND ORDER

Presently pending is the motion of defendant County of Rensselaer and the other

defendants in the above captioned cases (collectively referred to herein as the "County") for

an order precluding the claims for damages of approximately forty individuals as untimely.

Bruce Docket No. 110. Plaintiffs oppose the motion and cross-move for an order permitting

such claims. Bruce Docket No. 111. For the reasons which follow, both the motion and

cross-motion are granted in part and denied in part.

2

## I. Background

Plaintiffs commenced the two above captioned class actions alleging that class members had been subjected to strip searches at the Rensselaer County Correctional Facility between June 26, 1999 and July 1, 2002 without reasonable cause following their arrests on misdemeanor charges.   The cases were settled in March 2004 in an agreement subsequently approved by the district court. Kahler Docket Nos. 7, 26, 27.  The agreement required the County in principal part to pay class members $1,000 each plus incentive payments to class representatives, attorney's fees, and costs up to a maximum total expenditure of $2,700,000.  Settlement Agreement (Kahler Docket No. 7, Ex. 3) [hereinafter "Agreement"] at ¶¶ I(II), III(C)(1).

The Agreement required in pertinent part a period for notice of the settlement to potential claims and a period of sixty days from the "Notice Date" for the submission of claims.  Agreement at ¶¶ I(B), (S); IV(B).  By agreement of the parties, the period was extended to ninety days and that ninety-day period was incorporated in the district court's preliminary approval of the settlement. Kahler Docket No. 12; Defs. Reply Letter-Brief dated July 1, 2005 (Kahler Docket No. 33) at 1-2 & attachs.  The "Notice Date" which commenced the claims period was defined as "the date upon which Class Notice is mailed to known Class Members in accordance with the terms herein."  Id. at ¶ I(S).

Class notice was initially mailed to known class members at their last known addresses on April 30, 2004. Ness Aff. (Kahler Docket No. 17, Ex. B) at ¶ 9.  Nearly half of the 2,632 mailings were returned as undeliverable.  Id. at ¶ 11.  Through various sources of information, including additional information provided by the County, plaintiffs obtained updated address information on these known class members and re-mailed class notice to

3

them at these updated addresses. Id. at ¶¶ 11-15; Pls. Reply Letter-Brief (Bruce Docket No. 112) at 1-2. It appears that such re-mailings continued as new addresses were found until approximately August 1, 2004. Ness Aff. at ¶¶ 11-15; Pls. Reply Letter-Brief at 1-2.

Following the periods for notice and claims, the district court granted plaintiffs' motion for class certification and for final approval of the Agreement (Kahler Docket No. 26), and entered judgment thereon on September 24, 2004. Kahler Docket No. 27. The final order "barred and enjoined" any action for recovery by any class member who had failed to file a timely response to the class notice. Kahler Docket No. 26 at ¶¶ 4, 5. Thereafter, plaintiffs advised that approximately forty individuals had submitted claims for damages after July 29, 2004, the date ninety days after the initial mailing of the class notice to known class members. Plaintiffs submitted these claims to the County for payment pursuant to the Agreement. The County declined payment on the ground that the claims were untimely. These motions followed.[1]

## II. Discussion

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Torres v. Walker, 356 F.3d 238, 245 (2d Cir. 2004) (quoting Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 238, 245 (2d Cir. 1999)); Dahingo v. Royal Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 445 (S.D.N.Y. 2004) (Francis, M.J.). As a contract, its terms to which the parties have agreed should not

---

[1]These motions have been submitted to the undersigned pursuant to paragraphs X(N) and I(P) of the Agreement, which provide that any disputes regarding the Agreement shall be submitted to and resolved by the undersigned, whose decision shall be "final and binding."

thereafter be altered by a court. Dahingo, 312 F. Supp. 2d at 445-46. However, in the circumstances of a class settlement, a court may vary the terms of a settlement agreement for equitable considerations  where (1) the total cost to a defendant will not be increased, or (2) the term to be varied was established in the first instance by the court rather than by the parties. Id. at 446.

Here, the issue presented concerns the closing date for class members to file claims. It is clear from the Agreement that if claims filed after the closing date agreed between the parties is permitted, the cost to the County will be increased.  As noted above, the Agreement provided for the County to pay to plaintiffs the total of $1,000 for each approved claim, incentive payments to class representatives, costs, and attorneys' fees with the total not to exceed $2,700,000. Thus, the total cost to the County depends in part on the number of claims allowed.  Allowing the claims at issue here would necessarily increase the cost to the County by $1,000 for each such claim.  Accordingly, the first exception which would permit the Court to vary the terms of the Agreement is inapplicable here.

As to the second, plaintiffs contend that as the ninety-day period for claims was included in the district court's preliminary approval order, that date was established by the Court and not by the parties.  However, the parties' submissions on this motion demonstrate otherwise.  The extension of the claims period from the sixty days set forth in the Agreement, Agreement at ¶ I(B), to the ninety days established in the preliminary approval order, Kahler Docket No. 12 at ¶ 9, was negotiated and agreed between the parties and then incorporated in the preliminary approval order submitted by plaintiffs and signed by the district court. See Pls. Reply Letter-Brief at 1 (acknowledging that the parties provided the district court with "input" on the claims period); Defs. Reply Letter-Brief at 1-2 &

attachs. (referring to electronic mail communications between the parties establishing the parties' agreement to extend the claims period from sixty to ninety days and to the proposed preliminary approval order being submitted by plaintiffs). Therefore, the duration of the claims period was a term of the Agreement negotiated between the parties rather than set by the district court and the second exception is likewise inapplicable.

The parties' motions thus require interpretation of the Agreement under contract principles rather than an equitable determination of the appropriate closing date for the claims period. According to the Agreement, the ninety-day "Claims Period" commenced to run on the "Notice Date." Agreement at ¶ I(B). As quoted above, the "Notice Date" was "the date upon which Class Notice is mailed to known Class Members in accordance with the terms herein." Id. at ¶ I(S). As to such mailings, the Agreement further provides that "[n]otice will be provided to the Class by direct mailing of Class Notice and a Claim Form to all individuals at their last known or readily ascertainable address . . . ." Id. at ¶ IV(B)(1) (emphasis added). The "Notice Date" triggering the ninety-day claims period thus depended on when a notice was mailed to a class member's "last known address."

The record demonstrates that mailings to last known addresses of class members began on April 30, 2004 with the mailings to the then last known addresses of the 2,632 known class members. Ness Aff. at ¶ 9. The County contends that this mailing constituted the "Notice Date" and that the claims period ended ninety days later, or July 29, 2004. If this construction is accepted, the approximately forty claims at issue herein were properly rejected as untimely.

It appears uncontradicted from the record that 1,287 of the April 30, 2004 mailings were returned as undeliverable. Ness Aff. at ¶ 11. Plaintiffs thereafter made substantial

6

efforts to obtain more current addresses for the returned mailings, including obtaining further information from the County. Id. at ¶¶ 12-14; Pls. Reply Letter-Brief at 1-2.  Those efforts provided updated addresses for an unspecified number of the returned mailings and, between April 30 and approximately August 1, 2004, notices were re-mailed to such updated addresses.  Ness Aff. at ¶¶12-14.  Thus, it appears that the "last known address" for many of the class members was not fixed in time on April 30, 2004 but, rather, was a rolling process for an unspecified number as more current last known addresses were obtained and notices were re-mailed.

Under the Agreement, there is no dispute that the claims period commenced on the "Notice Date" of April 30, 2004 for the 1,345 class members for whom the notice was not returned as undeliverable as well as for any then unknown class members.  For those individuals, the claims period ended on July 29, 2004.  As to those among the remaining 1,287 to whom notices were re-mailed to updated addresses, the mailing to their last known address which constituted their "Notice date" occurred with the latest re-mailing.  For those class members, the claims period ended ninety days after such latest re-mailing and any claim received from such a class member may not be rejected as untimely.

### III. Conclusion

For the reasons set forth above, it is hereby

**ORDERED** that the parties' motion and cross-motion are **GRANTED** in part and **DENIED** in part as follows:

7

1. If a claim was received from an individual to whom plaintiffs re-mailed notice to an updated address obtained after April 30, 2004, such claim was timely filed and shall be accepted by the County if the claim was received within ninety days of the date on which the latest re-mailing was made;

2. All other claims received after July 29, 2004 were properly rejected by the County; and

3. As to any claims received after July 29, 2004, plaintiffs bear the burden of demonstrating that (a) an address different from that used for the April 30, 2004 mailing was obtained after April 30, 2004; (b) notice was re-mailed to such updated address; and (c) the claim was received within ninety days of the date on which the latest re-mailing of the notice was made.

**IT IS SO ORDERED.**

DATED:  August  17, 2005
        Albany, New York

_David R. Homer_

United States Magistrate Judge

8